UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRON C. GLENN,

                Plaintiff,                    Case No. 2:17-cv-10972
                                          District Judge George C. Steeh

v.                                        Magistrate Judge Anthony P. Patti

CORIZON HEALTHCARE, INC. and
DR. HARESH B. PANDYA, M.D.,

                Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT MDOC DEFENDANT HARESH B. PANDYA, M.D.'S MOTION FOR SUMMARY JUDGMENT (DE 62)

## I.    RECOMMENDATION

The Court should **GRANT** MDOC Defendant Haresh B. Pandya, M.D.'s

Motion for Summary Judgment.  (DE 62.)

## II.    REPORT

### A.    Procedural Background

Plaintiff Myron C. Glenn, a state prisoner who is proceeding *in pro per*, filed

the instant lawsuit against Defendants Corizon Health, Inc. (Corizon) and Dr.

Haresh B. Pandya, M.D., alleging that the Defendants were deliberately indifferent

to his serious medical needs in violation of the Eighth Amendment to the United

States Constitution.  (DEs 1, 12.)  Plaintiff filed his original complaint against

Corizon on March 27, 2017 (DE 1); he added Dr. Pandya as a co-defendant in an amended complaint filed on September 1, 2017.  (DE 12.)  Dr. Pandya was an MDOC employee. (DE 62-3 ¶ 7.)  On October 25, 2018, after many failed attempts at service, Dr. Pandya appeared and waived the filing of an answer at that time. (DE 57; *see also* DEs 35, 48.)

On May 3, 2019, the Court entered an order accepting my report and recommendation, granting Corizon's motion for summary judgment and dismissing Corizon from this case because Plaintiff failed to establish that Corizon is subject to liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), for a policy, custom or practice attributable to it that lead to Plaintiff's claimed injury.  (DEs 67, 73, 75.)

On November 8, 2018, Dr. Pandya filed the instant motion for summary judgment, arguing that Plaintiff's Eighth Amendment claim against him is barred by the statute of limitations and that Plaintiff has failed to exhaust his administrative remedies with respect to this claim.  (DE 62.)  Plaintiff filed his brief in opposition on December 20, 2018, contending that he timely filed his grievance (and subsequently this lawsuit) when he became "aware" of his claim against Dr. Pandya, and that his claim is timely because it involves a "continuing violation."  (DE 65.)  Dr. Pandya filed his reply on January 2, 2019, reiterating his

2

position. (DE 66.)  Dr. Pandya's motion for summary judgment is now ripe for consideration.

### B.     Factual Background

The factual history has been set forth in detail in my prior report and recommendation and need not be repeated in full here.  In brief summary, Plaintiff wears an orthopedic foot/ankle brace due to a childhood injury that resulted in having the five toes on his left foot amputated after that foot was crushed.  The Michigan Department of Correction (MDOC) issued Plaintiff an ankle foot orthotic brace and orthopedic boots to accommodate that brace in early 1998.  The boots became worn out due to normal wear and tear in late 2011 or 2012, and Plaintiff made repeated requests for a new pair of boots or shoes.  Plaintiff claims he suffered from pain, rashes, infections and sores due to rubbing from ill-fitting or inappropriate footwear.  After two years of requests by Plaintiff, numerous medical appointments, alternative treatment plans, and the issuance of shoes that did not fit over the brace, Plaintiff ultimately received an acceptable pair of shoes on February 13, 2014.  However, Plaintiff alleges that he continued to suffer complications due to infection, was hospitalized for two months to receive oral antibiotics, has been unable to grow healthy tissue on his foot, and experiences back pain and sciatica as a result of overcompensating for his foot pain.

Dr. Pandya was employed by the MDOC as the Southern Region Regional Medical Officer (RMO) from March 2005 until his retirement (effective July 31, 2013).  (DE 62-3, ¶ 7.)  According to the Complaint, Plaintiff made several requests in "late 2011 and mid 2012, to Corizon staff for a new pair of boots," and he was "told by Dr. Killaru, M.D." "in mid 2012" that "his medical detail for orthopedic boots had been discontinued by the RMO [Pandya]."  (DE 12, ¶¶ 27-28.)  He further claims that his onsite medical provider (P.A. Wierman) made at least three 407 requests for orthopedic boots between March and December 2013, which were denied by "the RMO (Dr. Pandya) and Corizon higher-ups[.]"  (*Id.* ¶¶ 46-47.)  Plaintiff contends that he was "again forced to wear worn out boots" and that he "received treatment for abscesses through November 2011, mid 2012, late 2012, mid 2013 and late 2013."  (*Id.* ¶¶ 48-49.)  He complains that "[s]ince Corizon Inc. and Dr. Pandya discontinued [his] special accommodation for orthopedic boots in 2012, he has continuously been in pain, OFTEN UNABLE TO WALK, AND WITH GREAT DIFFICULTY WHEN HE COULD, and on occasion [he] has been unable to put any shoe, boot, shower shoe, footwear on the affected foot."  (*Id.* ¶ 65 (capitalization in original).)

Plaintiff similarly contends in his response to Dr. Pandya's motion for summary judgment that "[i]n 2011-12 and as late as June 2013, Doctor Pandya denied/delayed orthopedic footwear for Plaintiff inspite [sic] of being warned of

4

adverse affect [sic]," and that "[t]he acts and inactions providing the basis for the injuries – as alleged in Plaintiff's amended complaint occurred in '2011,' '12,' and '13.'"  (DE 65 at 12, 17 (underscoring supplied).)

Plaintiff alleges that Dr. Pandya was deliberately indifferent to Plaintiff's serious medical needs by failing to provide him with adequate orthopedic boots or footwear that would accommodate his ankle brace, causing him "to unnecessarily contract infections (including but not limited to MRSA) diseases, back conditions, pain, and discomfort," and he seeks compensatory and punitive damages against Dr. Pandya, as well as his costs and expenses.  (DE 12 at 10-11.)[1]

### C.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

---

[1] Plaintiff also sought injunctive relief, but only against Corizon.  (DE 12 at 11.)

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Mgmt. Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words,

summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

**D.    Analysis**

**1.    Plaintiff's Eighth Amendment Claim against Dr. Pandya is Barred by the Statute of Limitations**

**a.    Statute of limitations in § 1983 actions**

For actions brought pursuant to § 1983, federal courts apply state personal injury statutes of limitation.  *See Wilson v. Garcia*, 471 U.S. 261, 280 (1985); 42 U.S.C. § 1988 (providing that the limitations period for all § 1983 claims is the one most analogous state statute of limitations).  In Michigan, the statute of limitations for personal injury claims is "3 years after the time of the death or injury."  MCL 600.5805(2) ("injury to a person or property").  Although the *duration* of the statute of limitations is governed by state law, federal law governs when the statute accrues, or *begins* to run.  *See Wilson,* 471 U.S. at 267; *Sevier v. Turner,* 742 F.2d 262, 272 (6th Cir. 1986).  Under federal law, "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his actions."  *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Scott v. Ambini*, 577 F.3d 642, 646 (6th Cir. 2009) (quoting *Sevier*, 742 F.2d at 273); *see also Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003) ("In determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights.").

However, section 1983 claims can be tolled while the plaintiff exhausts his

required administrative remedies.  *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir.

2012); 42 U.S.C. § 1997e(a).

      **b.**    **Plaintiff's claim against Dr. Pandya accrued more than three years before he filed his original complaint, even if the statute of limitations period is tolled for pursuing administrative remedies**

              **i.**    **Dr. Pandya's "personal involvement" in Plaintiff's case ended, at the latest, on July 31, 2013**

First, it is well settled that "[t]o recover damages under 42 U.S.C. § 1983, a

plaintiff must establish a defendant's *personal responsibility* for the claimed

deprivation of a constitutional right."  *Diebitz v. Arreola*, 834 F.Supp. 298, 304

(E.D. Wis. 1993); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (a

plaintiff must allege and prove that a defendant was personally involved in some

manner in the alleged unconstitutional activity set out in the Complaint).  As the

Supreme Court explained, "[b]ecause vicarious liability is inapplicable to ... §

1983 suits, a plaintiff must plead that each Government-official defendant, *through

the official's own conduct*, has violated the Constitution."  *Ashcroft v. Iqbal*, 556

U.S. 662, 676 (2009) (emphasis added).  In other words, in order to state a claim

under § 1983, "[a] plaintiff must allege facts, not simply conclusions, that show

that an individual was *personally involved* in the deprivation of his civil rights.

Liability under § 1983 must be based on the personal involvement of the

defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.").

It is undisputed that Dr. Pandya retired from MDOC employment effective July 31, 2013. (DE 62-3, ¶ 6.) Plaintiff has made no factual allegations that Dr. Pandya was *personally involved* in any decisions related to the provision of orthopedic boots or his healthcare at all since his retirement. Rather, as stated above, all of Plaintiff's allegations regarding Dr. Pandya occurred prior to July 31, 2013. (*See* DE 12, ¶¶ 27-28 (Plaintiff was "told" "in mid 2012 … that his medical detail for orthopedic boots had been discontinued by the RMO [Pandya]"), 46-47 (P.A. Wierman made at least three 407 requests for orthopedic boots between March and December 2013, which were denied by Dr. Pandya and "Corizon higher-ups"), 65 ("Since Corizon Inc. and Dr. Pandya discontinued Plaintiff's special accomodation [sic] for orthopedic boots in 2012, he has continuously been in pain, OFTEN UNABLE TO WALK, AND WITH GREAT DIFFICULTY WHEN HE COULD, and on occasion [he] has been unable to put any shoe, boot, shower shoe, footwear on the affected foot."), 71-72 (alleging that Dr. Pandya's decision to discontinue or delay Plaintiff's orthopedic boots constitutes deliberate

10

indifference to his serious medical needs in violation of the Eighth Amendment).) Similarly, in his response to Dr. Pandya's motion, Plaintiff alleges only that "[i]n 2011-12 and as late as June 2013, Doctor Pandya denied/delayed orthopedic footwear for Plaintiff," and that "[t]he acts and inactions providing the basis for the injuries – as alleged in Plaintiff's amended complaint occurred in '2011,' '12,' and '13.'" (DE 65 at 12, 17.) And, in his affidavit in support of his response brief, Plaintiff states that Dr. Pandya "was indeed the person and title who denied the boots as late as 6-27-13." (DE 65 at 87, ¶ 18.)

Accordingly, Dr. Pandya's "personal involvement" in this case, and thus his potential liability to Plaintiff under § 1983, ended by June 27, 2013 (per the Plaintiff's own allegations), or at the latest, upon his retirement from MDOC service effective July 31, 2013.

### ii. Plaintiff's Eighth Amendment claims accrued, at the latest, on July 31, 2013

"[T]he statute of limitations [on a § 1983 claim] begins to run when the plaintiff knows or has reason to know of the injury which is the basis for his actions." *McCune*, 842 F.2d 905. Because Plaintiff makes no factual allegations that Dr. Pandya was *personally involved* in any decisions related to the provision of orthopedic boots to Plaintiff, or his healthcare at all, after his July 31, 2013 retirement date, Plaintiff's Eighth Amendment claim against Dr. Pandya accrued, at the latest, on July 31, 2013. *See Kensu v. Buskirk*, No. 13-10279, 2015 WL

11

5159197, at *3 (E.D. Mich. Sept. 2, 2015) (finding plaintiff's claims accrued against Tyree, at the latest, on Tyree's last day of work because "Tyree could not have been involved [in plaintiff's medical care] after" that date.)

Plaintiff contends in his response brief that his cause of action is timely because he did not become "aware … that proper footwear was available," and that he "qualified for it in 2011" until the last week of December 2013 through January 2014, at which time he wrote Grievance No. JCF-14-01-272-12D3, which was exhausted in May 2014.  However, Plaintiff's contention that he was not "aware" of his claim against Dr. Pandya until January 2014 is belied by his allegations in the Complaint, in his response brief, and his affidavit, as well as the medical record.  As stated above, Plaintiff states that "[i]n 2011-12 and as late as June 2013, Doctor Pandya denied/delayed orthopedic footwear for Plaintiff," that "[t]he acts and inactions providing the basis for the injuries – as alleged in Plaintiff's amended complaint occurred in" 2011 to 2013, and that he "received treatment for abscesses" since November 2011 through 2013 and "has continuously been in pain" "[s]ince Corizon Inc. and Dr. Pandya discontinued [his] special accommodation for orthopedic boots in 2012."  (DE 12, ¶¶ 27-28, 46-49, 65; DE 65 at 12, 17.)  This injury forms the basis of Plaintiff's claim against Dr. Pandya, and Plaintiff concedes he was aware of this injury at or very near the time Dr. Pandya allegedly denied him orthopedic boots in 2012, and certainly by the time

12

Dr. Pandya retired in July 2013, and that he "was told, in "mid-2012" that "his medical detail for orthopedic boots had been discontinued by the RMO[,]" *i.e.*, Dr. Pandya. (*Id.*)  In addition, the medical record demonstrates that Dr. Pandya approved a request for "high top boots" on December 4, 2011, and subsequently addressed Plaintiff's reported ulcers and other accommodation requests through June 27, 2013.  (DE 65 at 34, 42, 48-49.)

   "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence."  *Scott*, 577 F.3d at 646. Plaintiff admittedly knew that the RMO had denied his request for orthopedic boots by mid-2012, and that the alternative footwear provided was allegedly causing pain and ulcers during the 2011 to 2013 time period prior to Dr. Pandya's retirement date.  That he was subsequently approved for orthopedic boots in January 2014 does not change his admission that he was well aware of all operative facts at the time they occurred, and long before Dr. Pandya retired on July 31, 2013.  Thus, Plaintiff knew, or reasonably should have known, of his potential claim against Dr. Pandya, and thus his claims accrued, in mid-2012, when he was "told" that Dr. Pandya discontinued the detail for his orthopedic boots, or, giving Plaintiff the benefit of the doubt, at the latest by the time Dr. Pandya effectively retired from MDOC employment on July 31, 2013, which is the latest date he could have arguably been personally involved in any decisions regarding

13

Plaintiff's healthcare.  *See Scott*, 577 F.3d at 646 (plaintiff's cause of action accrued when physician allegedly refused prisoner's requests for further cancer testing and for therapeutic treatment, not subsequently when physician allegedly performed second biopsy and referred plaintiff for treatment); *Hermansen v. Schickel*, No. 99-5230, 1999 WL 1282438, at *1 (6th Cir. Dec. 27, 1999) (concluding that prisoner's cause of action for deliberate indifference accrued on the date that he was denied medical care, even though the full extent of his injury was not known until later); *Herrerra v. Michigan Dep't of Corr.*, No. 5:10-CV-11215, 2011 WL 3862640, at *13 (E.D. Mich. July 22, 2011) (plaintiff knew or should have known of his injuries at the time the doctor allegedly refused to provide medical treatment), *report and recommendation adopted by* 2011 WL 3862390 (E.D. Mich. Sept. 1, 2011); *Owens v. Corr. Med. Servs., Inc.*, No. 1:06-CV-388, 2006 WL 3344986, at *3 (W.D. Mich. Nov. 17, 2006) ("Plaintiff had reason to know of the harm done to him when CMS denied him treatment in 2002. Hence, his claims accrued in 2002.").

> ### iii.   The statute of limitations on Plaintiff's Eighth Amendment claim against Dr. Pandya expired, at the latest, on November 12, 2016

Because Plaintiff's Eighth Amendment claim against Dr. Pandya accrued, at the latest, on July 31, 2013 (the date Dr. Pandya effectively retired from MDOC

employment), the statute of limitations on that claim expired by July 31, 2016, well before Plaintiff filed his initial complaint in this matter on March 27, 2017.

However, § 1983 claims are tolled while the plaintiff exhausts his required administrative remedies. *See Surles*, 678 F.3d at 458. Plaintiff contends that he exhausted his administrative remedies regarding his claims in this lawsuit in Grievance No. JCF-14-01-272-12D3, filed on January 30, 2014, and that he received a Step III determination on May 14, 2014, and that "state statute of limitations would survive all the way till May of 2017." (DE 65 at 21.)[2] Dr. Pandya argues that this grievance failed to exhaust Plaintiff's administrative remedies as to him, and thus does not act to toll the statute of limitations. (DE 62 at 16.) However, assuming that that Grievance No. JCF-14-01-272-12D3 tolls the limitations period as to Plaintiff's claim against Dr. Pandya, that period is tolled, at most, for an additional 104 days while Plaintiff pursued appropriate administrative remedies regarding Grievance No. JCF-14-01-272-12D3. *Surles*, 678 F.3d at 458.

---

[2] Plaintiff's contention that the statute of limitations "would survive all the way till May of 2017" because his Step III grievance was resolved in May 2014 (DE 65 at 20-21) is simply wrong. It is well settled that the statute of limitations does not *begin to run* when an administrative appeal is denied; rather, it is merely *tolled* during the pendency of that appeal. *See Surles*, 678 F.3d at 458; *see also Stradley v. Corizon Health Care Provider*, No. 16-cv-11563, 2017 WL 3720455, at *3 (E.D. Mich. Aug. 29, 2017) (rejecting plaintiff's claim that his claims are timely because his complaint was filed less than a year after his grievance was denied).

15

Adding 104 days to July 31, 2013, the three year statute of limitations period began to run on Plaintiff's claim against Dr. Pandya, at the latest on November 12, 2013, and the three year statute of limitations period therefore would have ended on November 12, 2016, still over four months *before* Plaintiff filed his original complaint in this matter.

### iv. The continuing violations doctrine does not apply to Plaintiff's Eighth Amendment claim against Dr. Pandya

Plaintiff contends that the continuing violations doctrine applies to allow the Court to consider otherwise time-barred actions.  However, "a continuing violation 'is occasioned by continual unlawful acts, *not continual ill effects from an original violation*.'"  *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 466 (6th Cir. 2010) (emphasis added) (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007)).  In the context of deliberate indifference claims, "[a]ctual acts by a [defendant] of refusing medical care represent discrete unlawful acts (beyond  passive inaction) that trigger the statute of limitations."  *Id.* For the continuing violation doctrine to apply to Plaintiff's claim against Dr. Pandya, at a minimum, Plaintiff would have had to alleged at least one act of deliberate indifference by Dr. Pandya <u>during the limitations period</u>.  *See Bruce*, 389 F. App'x at 566 (requiring "continual, unlawful acts" within the limitations period).  "Passive inaction does not support a continuing violation theory."

16

*Eidson*, 510 F.3d at 635 (internal citations omitted). As explained above, Plaintiff can allege no act by Dr. Pandya falling *within* the limitations period in this case; rather, any such acts necessarily ended upon Dr. Pandya's retirement from MDOC service on July 31, 2013. Any "injury" within the limitations period that could possibly be attributable to Dr. Pandya based on his alleged denial of orthopedic footwear for Plaintiff "in mid 2012" is, at most, a continuing ill *effect* of that decision, not a continuing unlawful *act* by Dr. Pandya.[3] Accordingly, the continuing violation doctrine does not apply to Plaintiff's claim against Dr. Pandya.

### v. Conclusion

Plaintiff's § 1983 claim against Dr. Pandya is time-barred by the statute of limitations, and it is therefore recommended that Dr. Pandya is entitled to summary judgment on Plaintiff's claim.

### 2. Exhaustion of Administrative Remedies

---

[3] While the Court previously stated that Plaintiff "states a claim [against Corizon] sufficient to warrant tolling under the continuing violation doctrine," that decision was limited to Plaintiff's claims against Corizon, based on the alleged application of a "policy, practice or custom" to Plaintiff *throughout Plaintiff's medical treatment* in the MDOC, including when he was given orthopedic boots in February 2014 and through November 2014 when he was diagnosed with both MRSA and Osteomyelitis, well after Dr. Pandya retired. (DE 67 at 23.) Conversely, here, any actions by Dr. Pandya ended, at the latest, when he retired, and none occurred within the limitations period.

Dr. Pandya also argues that, even if Plaintiff's claim against him is not time-barred, he is entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies against Dr. Pandya prior to filing this lawsuit.

### a.    Prison Litigation Reform Act

Under the Prison Litigation Reform Act (PLRA), a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211.  The prison's grievance process determines when a prisoner has properly exhausted his

18

or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint and add claims that were exhausted after the commencement of the lawsuit, *provided that the plaintiff's original complaint contained at least one fully exhausted claim*." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) (emphasis added). Moreover, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

19

### b.      MDOC Grievance Procedures

Pursuant to its Policy Directive (PD) 03.02.130, dated July, 9, 2007, the

administrative remedies available at the MDOC are as follows.  First, the inmate

must attempt to resolve any issue with the staff member involved within two

business days of becoming aware of a grievable issue.  (DE 62-4, ¶ P.)  If the

issues are not resolved within five business days, the inmate may file a Step I

grievance using the appropriate form.  (*Id.*)  "Dates, times, places, and names of all

those involved in the issue being grieved are to be included." (*Id.* ¶ R.)  The inmate

should receive a response within fifteen business days of filing the grievance.  (*Id.*

¶ X.)

If the inmate is dissatisfied with the disposition of the grievance or does not

receive a response by ten business days after the due date, he or she may file a Step

II grievance using the appropriate form.  (*Id.* ¶ BB.)  As with Step I, a response to

the Step II grievance should be issued within fifteen business days.  (*Id.* ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not

receive a response by ten business days after the response was due, he or she may

file a Step III grievance.  (*Id.* ¶ FF.)  The matter is fully exhausted after the

disposition of the Step III grievance. (*Id* ¶ B.)  *Surles*, 678 F.3d at 455 ("A grievant

must undertake all steps of the MDOC process for his grievance to be considered

fully exhausted.").  "The total grievance process from the point of filing a Step I

grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." (*Id.* ¶ S). Although the 120-day deadline is not mandatory, "some courts view the time frame as a deadline for the MDOC to respond to a Step III grievance." *Muttscheler v. Martin*, No. 1:12cv1221, 2013 WL 3730095, at *5 (W.D. Mich. July 15, 2013) (citing *Sims v. Rewerts*, No. 07-12646, 2008 WL 2224132, at *5 (E.D. Mich. May 29, 2008)).

### c.    Plaintiff failed to exhaust his administrative remedies as to any claims against Dr. Pandya

Although Plaintiff alleges that he was "told" "in mid-2012" that his request for orthopedic boots had been denied by the RMO[,]" and alleges that "Dr. Haresh B. Pandya was the regional medical official (RMO), who was in charge of approving and discontinuing special accommodations such as orthopedic boots at the time" (DE 12, ¶¶ 27-28 (capitalization standardized)), he did not file a grievance regarding those allegations at that time.  Neither did he file a grievance regarding the alleged denial of orthopedic boots any time before or around the time of Dr. Pandya's retirement from MDOC service, even though he states that he was "continuously in pain" since "Dr. Pandya discontinued [his] special accomodation [sic] for orthopedic boots in 2012[.]"  (*See id.* ¶ 65.)  Rather, the parties agree that the *only* grievance filed by Plaintiff that addresses his footwear is Grievance No. JCF-14-01-272-12D3, which was submitted to the Step I grievance coordinator on

21

January 31, 2014, six months after Dr. Pandya retired from employment with the State of Michigan.  (DE 62 at 10, citing DE 62-3, ¶ 7; DE 65 at 23.)[4]  The "date of incident" for that grievance is January 23, 2014, and states that Plaintiff attempted to resolve "matters herein by speaking with health care personal [sic] on 1/10/14 and 1/23/14."  (DE 62-2 at 28, 30.)  Plaintiff complains about not being provided with an "afo brace, wedge and orthopedics [sic]boots to function adequately in a institutional setting" and that the "high top shoes provided by health care are inadequate" causing him ulcers and cellulitis, and the breakdown of skin-grafted areas.  (*Id.*)  He claims that "JCF health care actions have been completely ineffective," that he is in "constant pain and the lack of care is impeding [his] quality of life," and he requests to be seen by an orthopedic specialist.  (*Id.*)

The Step I response indicated that Plaintiff was "approved for physical therapy for orthotics, measurement of left foot for proper fitting of AFO [brace]

---

[4] Plaintiff attached as an exhibit to his Amended Complaint a different grievance complaint form dated January 13, 2014, with an incident date of December 23, 2013.  (DE 12 at 13-14.)  However, there is no indication that this grievance form was ever submitted to the grievance coordinator (it has no assigned grievance identifier number or date "received at Step I") and it was not included in the Step III grievance report provided by the MDOC.  (Compare *id.* with DE 62-2 at 25-30.) Plaintiff acknowledges in his response that he wrote the applicable grievance on January 30, 2014, and that he may have "mistakenly submitted [a] practice copy" of the grievance form with his Amended Complaint.  (DE 65 at 13, 72, 88.) Accordingly, the Court finds that the operative grievance form is the January 30, 2014 complaint received by the MDOC at Step I on January 31, 2014.  (DE 62-2 at 28.)

and surfeit boot" on January 24, 2014 (seven days before the grievance was received at Step I), and that he "went to physical therapy to be fitted for the AFO [brace] and surfeit boot" on February 6, 2014.  (DE 62-2 at 29.)  The Step I grievance was denied, and the denial was upheld at Steps II and III, with the Step III decision mailed to Plaintiff on May 14, 2014.  (DE 62-2 at 25-27.)

Dr. Pandya argues that this grievance does not properly exhaust Plaintiff's administrative remedies as to his claims against *him* because the grievance does not mention Dr. Pandya by name or by reasonable implication, and because Dr. Pandya, in fact, retired approximately six month before the date of that grievance. (DE 62 at 22-23.)  Plaintiff responds that this grievance was addressed on the merits and there was no indication that prison officials questioned who was being grieved, and thus it exhausts all of Plaintiff's claims regarding his footwear. Plaintiff claims that he filed this grievance "[o]nce [he] found out that he should have been issued orthopedic sure-fit boots and gel-padding two years prior."  (DE 65 at 27.)

However, that is not what Plaintiff grieved in JCF-14-01-0272-12D3. Rather, he complained generally about his *current treatment* by "JCF Health care staff" and Corizon – that "the high top shoes provided by health care are inadequate causing [him] ulcers and cellulitis" – without mention of the "RMO" or Dr. Pandya (of whose role he claims to have been aware since mid-2012), and

requested appropriate orthopedic boots, as of the date of the incident (January 23, 2014).  (DE 62 at 28, 30.)  Contrary to Plaintiff's assertion in his response brief, he did not indicate in that grievance that he was grieving the actions (or inactions) taken by the RMO or indicate that he was recently informed that he qualified for orthopedic footwear in 2011.  (*See id.*)  Further, the grievance was filed over six months after Dr. Pandya retired.  Thus, this grievance cannot be considered as exhausting a claim against Dr. Pandya, who was not then a current member of the "JCF Health care staff" or "Corizon" at the time the grievance was filed.[5]

As Defendant aptly states, "simply filing a grievance that addresses the subject matter of a lawsuit does not satisfy the PLRA'a exhaustion requirement for every person named in the complaint."  (DE 66 at 2, citing *Mitchell v. Klee*, No. 13-13632, 2015 U.S. Dist. LEXIS 37247 (E.D. Mich. Mar. 25, 2015).)  As explained above, Paragraph R of the relevant MDOC grievance policy requires a grievance to include the "names of all those involved in the issue being grieved…."  (DE 62-4, ¶ R ("Dates, times, places, and names of all those involved in the issue being grieved are to be included.").)  While some courts have found that a generalized referral to "health care services," in combination with specific

---

[5] As explained above, Dr. Pandya was the Southern Region RMO for the Bureau of Health Care Services (BHCS) during his tenure with the MDOC, and the Southern Region includes *18 separate MDOC facilities*, only one of which is JCF.  (DE 62-3, ¶ 7.)

24

recitations of the date(s) and other identifying information, such as reference to

specific kites, may be sufficient to identify the target(s) of the grievance for

purposes of exhaustion, even if those individual defendants are not named in the

grievance, *see, e.g., Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *2-3

(E.D.  Mich. Sept. 23, 2009), others have found that a broad reference to "health

care staff," without more specific allegations in the grievance regarding the

defendants, is insufficient is exhaust administrative remedies as to particular

defendants.  *See, e.g., Solomon v. Mich. Dept. of Corrs.*, No. 2:10-CV-59, 2011

WL 4479300, at *3 (W.D. Mich. Aug. 31, 2011) *report and recommendation*

*adopted by* 2011 WL 4479407 (W.D. Mich. Sept. 27, 2011.)  "A prisoner must

specifically mention the involved parties in the grievance to alert the prison

officials of the problems so that the prison has a chance to address the claims

before they reach federal court."  *Solomon*, 2011 WL 4479300, at *3 (citing *Bell v.

Konteh*, 450 F.3d 651, 653 (6th Cir. 2006)).  Filing a grievance that does not name

Dr. Pandya, does not refer to the "RMO," and does not refer to any

actions/inactions attributable specifically to Dr. Pandya during his tenure at the

MDOC, who retired six months prior, does not give notice to Dr. Pandya, or

anyone else, that he is a target of the grievance, as opposed to current "JCF Health

care staff" and "Corizon."  As the Sixth Circuit stated in *Mattox v. Edelman*, 851

F.3d 583 (6th Cir. 2017), "[i]f generalized dissatisfaction with an inmate's medical

25

care were sufficient to exhaust all possible claims related to that care, then prisoners could bring claims in federal court without ever giving prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596 (requiring the grievance to "notif[y] the relevant prison medical staff as to which facets of his care are deficient").

Accordingly, even if Plaintiff's claims were not time-barred, he has failed to exhaust his administrative remedies as to his claim against Dr. Pandya.

### 3.   Eleventh amendment immunity

Finally, although not addressed by Defendant, the Court finds that Plaintiff's claim against Dr. Pandya in his official capacity for money damages is barred by the Eleventh Amendment and should be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

Civil complaints filed by a *pro se* prisoner who, as here, has been granted *in forma pauperis status,* are subject to the screening requirements of 28 U.S.C. §§ 1915(e)(2) & 1915A(b) "at any time." *Brown v. Bargery*, 207 F.3d 863, 865-66 & n.3 (6th Cir. 2000); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) (affirming that § 1915(e)(2) remains applicable throughout the litigation process), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  Congress enacted 28 U.S.C. § 1915 seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992).  In doing so, however,

"Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e) as part of the statute, which requires district courts to screen and to *sua sponte* dismiss complaints that are frivolous, fail to state a claim upon which relief can be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); *Neitzke*, 490 U.S at 328-29.

Plaintiff sues Dr. Pandya in his individual and official capacities for damages. (DE 12, ¶¶ 5, 76(d).) However, Plaintiff's claim against Dr. Pandya in his official capacity, aside from being barred by the statute of limitations as explained above, is also barred by Eleventh Amendment immunity. This is because an official capacity claim filed against a public employee "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010). Thus, Plaintiff's claim against Dr. Pandya in his official capacity is a claim against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). In other words, "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Graham*, 473

U.S. at 169 (citation omitted). As the United States Supreme Court has explained, "[r]elief that in essence served to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986). Accordingly, Dr. Pandya, to the extent he is sued in his official capacity as an RMO for the MDOC, is entitled to Eleventh Amendment immunity.

### E.    Conclusion

For the reasons stated above, the Court should **GRANT** MDOC Defendant Dr. Pandya's Motion for Summary Judgment and dismiss Plaintiff's claim against him. (DE 62.) Acceptance of this report and recommendation would bring this case to a close.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have

to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 8, 2019                      s/*Anthony P. Patti*
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on July 8, 2019, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti
