UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MYRON GLENN,

        Plaintiff,

v.

CORIZON MEDICAL, INC. and DR.
HARESH B. PANDYA, M.D.,

        Defendants.
_____/

Case No. 2:17-cv-10972
District Judge George Caram Steeh
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ECF No. 81)

### I. Introduction

Plaintiff, Myron Glenn, a state prisoner proceeding *in pro per*, filed the instant lawsuit against Defendants Corizon Medical, Inc. (Corizon) and Dr. Haresh B. Pandya, alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. (ECF Nos. 1, 12.) Both Corizon and Dr. Pandya have since been dismissed from the case (ECF Nos. 73, 82), leaving no pending claims against any active defendants, but the Court has kept the case open for resolution of Plaintiff's September 10, 2019 motion for leave to file a second amended complaint. (ECF No. 81.) Plaintiff seeks to add four new defendants – Steven Bergman, D.O., Harriet Squier, M.D., Keith Papendick, M.D., and Erin Orlebeke, M.D. – as well as allegations of "further

harmful acts injury by the defendants[.]" (ECF No. 81, PageID.963.) According to Plaintiff's proposed second amended complaint, Drs. Bergman, Squier, Papendick, and Orlebeke were, at all times relevant to the complaint, utilization managers (UMs) employed by Corizon, responsible for approving requests from medical providers to assess state prisoners for orthopedic boots. (ECF No. 81, ¶ 6, PageID.966.)

## II.   Background

### A.   Factual and Procedural Background[1]

As previously stated by the Court:

> Plaintiff wears an orthopedic foot/ankle brace due to a childhood injury that resulted in having the five toes on his left foot amputated after that foot was crushed. The Michigan Department of Corrections (MDOC) issued Plaintiff an ankle foot orthotic brace in early 1998. The boots became worn out due to normal wear and tear in late 2011 or 2012, and Plaintiff made repeated requests for a new pair of boots or shoes. Plaintiff claims he suffered from pain, rashes, infections and sores due to rubbing from ill-fitting or inappropriate footwear.

(ECF No. 76, PageID.867.)

Plaintiff, alleging deliberate indifference to his serious medical needs for delayed access to the proper orthopedic boots, filed his original complaint against Corizon on March 27, 2017 (ECF No. 1). He added Dr. Pandya as a co-defendant

---

[1] Many of the facts herein have been restated from the Court's prior opinions in this case.

in an amended complaint, filed on September 1, 2017 (ECF No. 12). Important to the analysis of this motion, at all times relevant to the lawsuit as alleged in Plaintiff's first amended complaint (ECF No. 12), the MDOC contracted with Corizon to provide healthcare to Michigan prisoners. Corizon was responsible for reviewing and approving, denying, or providing alternative treatment plans (ATPs) in response to its medical providers' Consultation Requests ("407 Requests") for offsite special appointments, including physical therapy and orthotic appointments. And although Corizon medical providers were responsible for *submitting* requests for items to the MDOC Regional Medical Officer (RMO) requiring RMO approval, such as for certain types of special footwear for medical reasons, the MDOC RMO was responsible for approving or deferring those requests based upon the MDOC's guidelines. During that timeframe, the MDOC had Medical Service Advisory Committee (MSAC) guidelines in place regarding the provision of special footwear for medical reasons, and Dr. Pandya was the MDOC RMO. The MSAC guidelines provided that the MDOC RMO was to give final approval before orthopedic (orthotic) shoes were specially made, which they "rarely" were. (ECF No. 27-3, PageID.179.) This is a key distinction: Corizon reviewed 407 Requests while the MDOC reviewed RMO Requests. (ECF No. 67, PageID.751-752, citing ECF No. 27-3, PageID.179.)

In his first amended complaint, Plaintiff claimed that Corizon: (1) had "a state wide policy, custom, and practice of not providing prisoners with orthopedic or medically issued shoes or boots"; (2) "discontinued Plaintiff's orthopedic or medically issued shoes or boots as a cost savings measure rather than a medical decision"; and (3) had "policies, customs, and practices . . . of delaying, and denying the provision of necessary specialty referals [sic], consults, treatment and orthopedic footwear for [him]." (ECF No. 12, ¶¶ 68-69, 72, PageID.63.) With regard to Dr. Pandya, Plaintiff alleged that he discontinued Plaintiff's medical detail for orthopedic boots, and that he and Corizon denied Plaintiff's requests for orthopedic boots between 2011 and 2013. (ECF No. 12, ¶¶ 27-28, 46-49, 65, PageID.59, 61, 63.)

Ultimately, the Court granted summary judgment to both Corizon and Dr. Pandya and dismissed each from the lawsuit. (ECF Nos. 67, 73, 75-76, 82.) The Court granted summary judgment to Corizon on the basis that Plaintiff failed to establish liability under *Monell v. Dept. of Soc. Serv. Of the City of New York*, 436 U.S. 658 (1978), because nothing in the record demonstrated that Corizon had "a policy or custom of indifference so 'widespread, permanent and settled as to have the force of law' that led to Plaintiff's claimed injury[.]" (ECF No. 67, PageID.779; *see also* ECF No. 73, PageID.850.) In contrast, the Court concluded that Plaintiff had not fully exhausted his claim against Dr. Pandya, and that the

4

claim was time-barred, Dr. Pandya having retired from the MDOC on July 31, 2013. (ECF No. 76, PageID.873, 879-880, 887; ECF No. 82.)

Notably, Corizon referenced each of the individuals Plaintiff now seeks to add to the lawsuit throughout its March 2018 motion for summary judgment (ECF No. 27, PageID.159-166), as did Plaintiff in his response to the motion (ECF No. 47, PageID.308-309, 321-322, 325-327, 338), objections to the report and recommendation (ECF No. 70), and motion for reconsideration (ECF No. 74).[2] <u>Thus, Plaintiff became aware of these individuals, at the latest, in March 2018, approximately 18 months before filing the motion at issue</u>.

### B.     Instant Motion

On September 10, 2019, Plaintiff filed the instant motion for leave to file a second amended complaint pursuant to Rule 15(a), in which he seeks to add Drs. Bergman, Squier, Papendick, and Orlebeke as defendants to the lawsuit. (ECF No.

---

[2] Furthermore, in his October 4, 2018 response to the Court's order granting additional time for discovery pursuant to Plaintiff's Rule 56(d) motion (ECF No. 33), Plaintiff stated:

> Plaintiff can only pray at this point and time that he has correctly interpreted the law and standards which leads him to believe that naming Corizon officials; Erin Orlebeke (UM), Harriet Squire (UM), Keith Papendick (UM), and Steven Bergman (UM) can be named within his response to summery [sic] Judgment, absent being named as defendants in his complaint.

(ECF No. 56, PageID.537.)

5

81, PageID.963-964.) Further, a review of the proposed second amended complaint attached to the motion reveals that Plaintiff may also be seeking to renew his claims against Corizon based on the allegations added against these four Corizon employees, though Plaintiff's intentions are unclear. The attached complaint is essentially Plaintiff's first amended complaint, which includes allegations against now-dismissed Corizon and Dr. Pandya, with the addition of dates as recent as 2019 and allegations against the four new proposed defendants in capital letters. For example, following Paragraph 48 stating that Corizon "higher ups" had denied him boots (ECF No. 81, ¶ 48, PageID.970), which appeared nearly identically as Paragraph 47 in the first amended complaint (ECF No. 12, ¶ 47, PageID.61), Plaintiff alleges that the proposed new defendants, while serving as UMs for Corizon, denied or delayed his 407 Requests to be assessed for orthopedic boots "THROUGHOUT MID 2012 AND DECEMBER OF 2013 . . . ALSO 2016, 17, 18, AND 19" (ECF No. 81, ¶¶ 49-52, PageID.970-971). And in Paragraph 74, Plaintiff states:

> Since Corizon Inc., Dr. Haresh B. Pandya MD.; DR. HARRIET SQUIER MD.; DR. KEITH PAPINDICK MD.; DR. STEVEN BERGMAN DO.; AND DR. ERIN ORLEBEKE discontinued plaintiff's special accommodation for orthopedic boots in 2012, he has continuously been in pain, often unable to walk, and with great difficulty when he could, and on occasion plaintiff has not been able to where [sic] any shoe, boot, shower shoe, footwear on the affected foot.

(ECF No. 81, ¶ 74, PageID.973.)[3]

Corizon filed its response to Plaintiff's motion for leave to amend on September 27, 2019, arguing that Plaintiff's undue delay in filing the motion burdens the Court and prejudices Defendants. (ECF No. 84, PageID.1006-1008.) Specifically, Corizon asserts that Plaintiff knew of Drs. Bergman, Squier, Papendick, and Orlebeke 18 months before filing the instant motion, and states:

> Here, 1. Plaintiff has been aware of the factual basis of his complaint from the outset of the litigation; 2. Plaintiff did not offer any reason for failing to move for leave to amend until <u>after</u> adoption of the Report and Recommendation; 3. Granting leave to amend would substantially prejudice Defendant and require them to engage in new discovery, prepare new defenses, and file additional motions.

(ECF No. 84, PageID.1007.)

In reply, Plaintiff argues that he was not dilatory in waiting until September 2019 to file the instant motion, because he was "bombarded" with dispositive motions, discovery requests, and hospitalizations, had limited library time, and had to wait for grievances to fully exhaust. (ECF No. 85, PageID.1010-1011.) Further, he asserts that "even if [he] had filed his complaint at an earlier date, Defendant

---

[3] The possibility that Plaintiff seeks to renew his claims against Corizon, and to add additional allegations against it, is bolstered by the grievances attached to the proposed second amended complaint, which name Corizon and list incident dates subsequent to the filing of his first amended complaint. (ECF No. 81, PageID.976-989.)

would still have had to commit resources to respond." (ECF No. 85, PageID.1010.)

**III. Standards**

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading at this stage of the proceedings only after obtaining leave of the court. The Rule provides that the Court should freely give leave for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). "Nevertheless, leave to amend 'should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile.'" *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quoting *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995)). As the Supreme Court has explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reasons—such as *undue delay, bad faith or dilatory motive* on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, *undue prejudice* to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added).

On the other hand, Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after the date of the pleading* to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Unlike subrule 15(a), which expressly states that leave *should* be freely granted, the text of subrule 15(d) contains no such admonition, and instead uses the discretionary word "may." *Northeast Ohio Coal. For the Homeless v. Husted*, 837 F.3d 612, 625 (6th Cir. 2016) (subrule 15(d)'s aim is to give *broad discretion* to courts considering requests for supplementation) (citing Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment) (emphases added). And, "while Rule 15(d) allows a plaintiff to update his complaint and add allegations of later events relating to his original complaint, '[t]his rule does not, however, allow a plaintiff to add new claims relating to new events at a completely different prison involving not the original defendants but a whole new cast of characters.'" *Alexander v. Calzetta*, No. 2:16-CV-13293, 2018 WL 1725769, at *3 (E.D. Mich. Apr. 9, 2018) (quoting *Cage v. Harry*, No. 1:09-cv-512, 2010 WL 1254562, at *1 (W.D. Mich. Mar. 26, 2010)).

**IV.    Analysis**

To the extent Plaintiff seeks to renew his claims against Corizon by adding allegations of actions taken after he filed his first amended complaint, his motion is

9

one to supplement under Fed. R. Civ. P. 15(d). Nevertheless, the Court will treat the entire motion as one to amend because Plaintiff seeks to add four new defendants whose alleged actions would serve as the basis for any renewed claims against Corizon, no active defendants currently exist in the case, both Corizon and Plaintiff treat it as such, and "[t]he same standard of review and rationale [, abuse of discretion,] apply to a motion to supplement under Fed. R. Civ. P. 15(d) as to a motion to amend under Fed. R. Civ. P. 15(a)." *Hall v. Chapman*, No. 4:15-CV-13771, 2016 WL 7383685, at *1 (E.D. Mich. Dec. 21, 2016) (citing *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002)). For the reasons explained below, the Court **DENIES** Plaintiff's motion for leave to file a second amended (or a supplemental) complaint (ECF No. 81), under Fed. R. Civ. P. 15(a)(2) and (d).

### A. Four New Proposed Defendants

First, the record clearly demonstrates that Plaintiff acted with undue delay in requesting leave to add Drs. Bergman, Squier, Papendick, and Orlebeke to the lawsuit. "Delay alone will ordinarily not justify the denial of leave to amend; however, delay will at some point become 'undue,' 'placing an unwarranted burden on the court,' or 'prejudicial,' 'placing an unfair burden on the opposing party.'" *Comm. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 347 (6th Cir. 2007) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

10

Here, as Corizon asserts in its response to Plaintiff's motion (ECF No. 84, PageID.1006-1008), Plaintiff learned the identities of the four individuals he seeks to add, as well as their direct involvement in his treatment decisions, when Corizon filed its motion for summary judgment in March 2018 (ECF No. 27, PageID.159-166). Plaintiff himself referenced and discussed those individuals throughout his response to Corizon's motion (ECF No. 47, PageID.308-309, 321-322, 325-327, 338), objections to my report and recommendation (ECF No. 70), and motion for reconsideration (ECF No. 74). Yet, he waited 18 months, until September 2019, well after the Court had already decided Corizon's motion for summary judgment (ECF No. 75), to file the instant motion for leave to add the above individuals to his lawsuit. This delay was not only *per se* "undue," but the virtual certainty of a third round of summary judgments motions, in a case that is already over three years old, places "an unwarranted burden on the Court." *Comm. Money Ctr.*, *Inc.*, 508 F.3d at 347.

Further, Plaintiff's delay causes "an unfair burden on the opposing party." *Id*. The Court is indeed convinced that Corizon would suffer prejudice should it grant Plaintiff's request to add the four individual Corizon employees as defendants. By the time Plaintiff filed the instant motion, Corizon had seemingly conducted its discovery, and expended considerable resources, to successfully argue its motion for summary judgment, and Corizon would undoubtedly have to

11

conduct additional discovery, prepare new defenses on behalf of the four individuals, and file additional dispositive motions, if Plaintiff's request is granted. *See Williams v. Leatherwood*, 258 F. App'x 817, 825 (6th Cir. 2007) (affirming district court's denial of motion to amend based in part on district court's finding that granting leave to amend "would substantially prejudice defendants by requiring them to engage in new discovery, prepare new defenses, and file additional motions").

Nor do Plaintiff's explanations serve as proper justification for the delay. "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *500 Assoc., Inc. v. Vermont American Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012) (quotation marks and citation omitted). Plaintiff asserts that he was "bombarded" with dispositive motions and discovery requests, and had limited library time (ECF No. 85, PageID.1010-1011), but these are only the normal hazards associated with litigation. He also contends that he faced numerous hospitalizations and had to wait for grievances to fully exhaust (ECF No. 85, PageID.1010-1011), but the Court cannot imagine that either prevented him from filing the present motion earlier than 18 months after learning the identities of these four Corizon employees. While the Court has sympathy for the possibility that Plaintiff has, in fact, been wrongly denied his orthopedic footwear for an unreasonable amount of

time or on an unreasonable basis, once Plaintiff knew, thought he knew, or should have known who was responsible for his injuries, he needed to seek leave to add them, rather than wait to see how things would pan out with the existing cast of defendants. Accordingly, Plaintiff's request to add Drs. Bergman, Squier, Papendick, and Orlebeke to the lawsuit is **DENIED**.

### B. Corizon

Second, to the extent Plaintiff seeks to add more recent allegations and renew his claims against Corizon itself, his motion for leave to amend is **DENIED**, as any renewed claims against Corizon would be dependent upon the addition of Drs. Bergman, Squier, Papendick, and Orlebeke to the lawsuit, and the allegations made against each. Further, Plaintiff's attempts to renew his claims against Corizon appear to be precluded in light of the Court's adoption of my report and recommendation (ECF No. 67) and the dismissal of Corizon from the suit (ECF Nos. 73, 75). Notably, in its order adopting the report and recommendation to grant Corizon's motion for summary judgment, the Court rejected Plaintiff's assertion that it could establish a *Monell* claim against Corizon because Drs. Bergman, Squier, Papendick, and Orlebeke were policymakers with final decision-making authority, stating:

> While plaintiff identified these four individuals in his response brief to Corizon's motion for summary judgment, he did not argue that they were policymakers with final decision-making authority. Nor is there any evidence in the record regarding the duties and limitations on

>authority of these four individuals. In fact, the MDOC – Corizon Appeal Process provides that the MDOC Chief Medical Officer has final authority on all Medical Service Advisory Committee decisions.

(ECF No. 73, PageID.850.) And in its order denying Plaintiff's motion for reconsideration, the Court stated, "The court stands by its holding that the MDOC – Corizon Appeal Process provides that the MDOC Chief Medical Officer, and not Corizon Utilization Managers, has final authority on all Medical Service Advisory Committee decisions." (ECF No. 75, PageID.862.)

### C. Dr. Pandya

Finally, to the extent Plaintiff seeks to renew his claim against Dr. Pandya, his motion for leave to file a second amended complaint is **DENIED**. The Court determined the claim Plaintiff made against Dr. Pandya in his first amended complaint was time-barred, given Dr. Pandya's retirement from the MDOC on July 31, 2013. (ECF No. 76, PageID.873, 879-880, 887; ECF No. 82.) And in Plaintiff's proposed second amended complaint, he fails to allege that Dr. Pandya was re-employed by the MDOC following his retirement. Thus, any additional claims would likewise be time-barred.

**IT IS SO ORDERED.**

Dated: April 21, 2020        s/*Anthony P. Patti*
                             Anthony P. Patti
                             UNITED STATES MAGISTRATE JUDGE